This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports. Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions. Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**No. A-1-CA-37903**

**STATE OF NEW MEXICO,**

      Plaintiff-Appellee,

v.

**AARON DAVIS CLARK,**

      Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF CURRY COUNTY**
**Fred T. Van Soelen, District Judge**

Hector H. Balderas, Attorney General
Santa Fe, NM
M. Victoria Wilson, Assistant Attorney General
Albuquerque, NM

for Appellee

Bennett J. Baur, Chief Public Defender
Kimberly Chavez Cook, Assistant Appellate Defender
Santa Fe, NM

for Appellant

**MEMORANDUM OPINION**

**HENDERSON, Judge.**

**{1}** Following a jury trial, Defendant Aaron Davis Clark was convicted of abuse of a child, pursuant to NMSA 1978, Section 30-6-1(D) (2009); possession of a controlled substance, pursuant to NMSA 1978, Section 30-31-23(E) (2011, amended 2021); and tampering with evidence, pursuant to NMSA 1978, Section 30-22-5 (2003). Defendant raises two issues on appeal. First, he challenges the sufficiency of the evidence to support the convictions for all three charges; and second, he asserts that he received

ineffective assistance of counsel. For the reasons that follow, we reverse Defendant's conviction for child abuse and affirm his remaining convictions.

## BACKGROUND

**{2}** In February 2017, Officers Hernandez and Casarez of the Clovis Police Department responded to a disturbance call at the Metro PCS store in Clovis, New Mexico. Upon arrival, Officer Hernandez approached two individuals, Cynthia Romero and Kevin Devenport, standing outside of a car, and Defendant, who was sitting in the backseat of the same car. She also observed a small child in the car and identified the child as Defendant and Romero's son. Having had prior dealings with Defendant, Officer Hernandez ran his name through the National Crime Information Center database and found that he had an active warrant for his arrest. Before arresting Defendant, Officer Hernandez let him remove and leave his jewelry with Romero to prevent having to log the items into evidence. After emptying his pockets, Defendant asked to say goodbye to his son, which Officer Hernandez allowed.

**{3}** Defendant's son was lying unrestrained on top of a blanket on the back seat of the car. Officer Casarez watched Defendant say goodbye to his son, from the driver's side of the car. Officer Casarez saw Defendant tuck his arm underneath the child's blanket, up to his elbow. Suspicious because Defendant "was taking a long time" to say goodbye to his sleeping son, Officer Casarez asked Romero to take the child out of the car.

**{4}** After Romero removed the child, Office Casarez lifted the blanket the child was lying on and found what he believed, and was later determined, to be methamphetamine. The officers placed Defendant under arrest and confiscated the drugs.

**{5}** Defendant was charged with one count of each of the following: abuse of a child, possession of a controlled substance, and tampering with evidence. At trial, after the presentation of the State's evidence, Defendant moved for a directed verdict on all three counts. The district court denied Defendant's motion and allowed the charges to proceed to the jury, which found Defendant guilty on all three charges. This appeal followed.

## DISCUSSION

### I. Sufficient Evidence

**{6}** Defendant contends that his convictions cannot be upheld because the State failed to present sufficient evidence of (1) reckless child endangerment, (2) possession of methamphetamine, and (3) tampering with evidence. We are unpersuaded.

### A. Standard of Review

**{7}** "The test for sufficiency of the evidence is whether substantial evidence of either a direct or circumstantial nature exists to support a verdict of guilty beyond a reasonable doubt with respect to every element essential to conviction." *State v. Montoya*, 2015-NMSC-010, ¶ 52, 345 P.3d 1056 (internal quotation marks and citation omitted). "Substantial evidence is relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *State v. Rojo*, 1999-NMSC-001, ¶ 19, 126 N.M. 438, 971 P.2d 829. Our task is to "view the evidence in the light most favorable to the guilty verdict, indulging all reasonable inferences and resolving all conflicts in the evidence in favor of the verdict." *State v. Cunningham*, 2000-NMSC-009, ¶ 26, 128 N.M. 711, 998 P.2d 176. "Although appellate courts are highly deferential to the jury's decisions, it is the independent responsibility of the courts to ensure that the jury's decisions are supportable by evidence in the record, rather than mere guess or conjecture." *State v. Slade*, 2014-NMCA-088, ¶ 14, 331 P.3d 930 (internal quotation marks and citation omitted). "Jury instructions become the law of the case against which the sufficiency of the evidence is to be measured." *State v. Garcia*, 2016-NMSC-034, ¶ 17, 384 P.3d 1076 (alteration, internal quotation marks, and citation omitted).

## B.     Possession of a Controlled Substance and Tampering with Evidence

**{8}** Defendant contends that the State presented insufficient evidence to find that he possessed methamphetamine or tampered with evidence. Defendant argues that both of these convictions relied on the State's theory that he possessed the methamphetamine and then tampered with evidence by hiding it underneath his child.

**{9}** To convict Defendant of possession of methamphetamine the jury had to find that (1) he had methamphetamine in his possession, and (2) he knew it was methamphetamine. *See* UJI 14-3130 NMRA (defining possession of a controlled substance). For a conviction of tampering with evidence the jury had to find that Defendant (1) hid methamphetamine underneath the child with (2) the intent to prevent the apprehension, prosecution, or conviction of himself for the crime of possession of methamphetamine. *See* UJI 14-2241 NMRA. Defendant is only challenging whether there was sufficient evidence to find that he possessed methamphetamine and hid it under his child.

**{10}** The jury could reasonably infer that Defendant was in possession of methamphetamine and hid it under his child. "Possession" may be actual or constructive. *See* UJI 14-130 NMRA; *see also State v. Maes*, 1970-NMCA-053, ¶ 25, 81 N.M. 550, 469 P.2d 529 (stating that to prove possession "the [s]tate must prove physical or constructive possession of the object, with knowledge of the object's presence and narcotic character"). A person is in actual possession of methamphetamine when, "on the occasion in question, he knows what it is, he knows it is on his person or in his presence and he exercises control over it." UJI 14-130. Alternatively, the State may prove possession under a theory of constructive possession, whereby it must prove that "[e]ven if the object is not in his physical presence, he is in possession if he knows what it is and where it is and he exercises control over it." *Id.* "Under either an actual possession or constructive possession

theory, the two key elements the [s]tate must establish are knowledge and control." *State v. Jimenez*, 2017-NMCA-039, ¶ 48, 392 P.3d 668. A jury is permitted to draw a reasonable inference of both knowledge and control from circumstantial evidence. *Id.*

**{11}** The State presented evidence that when officers first arrived on the scene, Defendant and his child were alone in the back seat of the car, where the methamphetamine was later found. Officer Casarez testified that while Defendant was saying goodbye to his child, he observed Defendant tucking his right arm, up to his elbow, underneath the blanket the child was lying on. Officer Casarez also noticed that it took Defendant a "long time" to say goodbye to his child, who was asleep. Consequently, Officer Casarez believed Defendant may have "stashed" or "hidden" something underneath his son and asked Romero to remove the child from the car. After the child was taken from the back seat, Officer Casarez checked to make sure nothing was in the child's clothing. He then lifted the blanket that the child was lying on and found a small baggie containing a white crystalized substance, which was later determined to be methamphetamine.

**{12}** Based on the foregoing testimony, a reasonable jury could infer that Defendant, aware of his imminent detention and alone in the back seat of the car next to the child prior to his arrest, coupled with the timing of Defendant's suspicious behavior, both possessed and hid methamphetamine under his child's blanket. *See Cunningham*, 2000-NMSC-009, ¶ 26 (stating that "[t]he relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt" (internal quotation marks and citation omitted)). Accordingly, we conclude that there was sufficient evidence to convict Defendant of possession of methamphetamine and tampering with evidence.

## C.    Child Abuse

**{13}** Defendant also contends that the State failed to prove "a substantial foreseeable risk of actual harm to the child based on momentary placement of a small amount of meth[amphetamine] enclosed in a plastic baggie, underneath a blanket, underneath his sleeping son."

**{14}** In order to convict Defendant of negligent child abuse by endangerment, the jury was required to find beyond a reasonable doubt that Defendant (1) placed methamphetamine under his child; (2) by placing the methamphetamine under his child, Defendant caused the child to be placed in a situation that endangered his life or health; and (3) Defendant showed a reckless disregard for the safety or health of the child. *See State v. Holt*, 2016-NMSC-011, ¶ 20, 368 P.3d 409 (stating that "[t]he jury instructions become the law of the case against which the sufficiency of the evidence is to be measured" (alteration, internal quotation marks, and citation omitted)). The jury was further instructed that in order to find Defendant acted with "reckless disregard" it had to find that Defendant's "conduct was more than merely negligent or careless," and that Defendant "caused a substantial and unjustifiable risk of serious harm" to his child,

which means a law-abiding person would have behaved differently "out of concern for the safety or health of [Defendant's son]." *See State v. Consaul*, 2014-NMSC-030, ¶ 37, 332 P.3d 850 (clarifying that "criminally negligent child abuse" should be labeled as "reckless child abuse," which generally requires the actor to "consciously disregard a substantial and unjustifiable risk of such a nature and degree that its disregard involves a gross deviation from the standard of conduct that a law-abiding person would observe in the actor's situation"). We agree with Defendant that the evidence was insufficient to support his conviction for child abuse.

**{15}** In *State v. Chavez*, 2009-NMSC-035, ¶¶ 23-26, 146 N.M. 434, 211 P.3d 891, our Supreme Court recognized factors courts should consider when determining whether a defendant's conduct created a substantial and unjustifiable risk of harm. The *Chavez* factors were concisely stated in *State v. Schaaf*, 2013-NMCA-082, ¶ 9, 308 P.3d 160. Those factors are: (1) "the gravity of the risk, which serves to place an individual on notice that his conduct is perilous, and potentially criminal"; (2) "whether the defendant's conduct violate[d] a separate criminal statute, which bolsters the endangerment charge"; and (3) "the likelihood of harm."[1] *Id.* (internal quotation marks and citation omitted). "Also relevant is the length of time that these conditions [were] allowed to exist and the amount of supervision" that existed at the time the child was placed in the position of endangerment, which "can increase or mitigate the degree of risk involved." *Id.* (internal quotation marks and citation omitted). Our Supreme Court has also "indicated that the state must present specific evidence, including scientific or empirical evidence, connecting the circumstances to a substantial and foreseeable risk of harm, where it is not readily apparent in the record." *Id.* (citing *Chavez*, 2009-NMSC-035, ¶ 37).

**{16}** Here, the second factor, whether Defendant's conduct violated a separate criminal statute, is clearly met. As we noted above, we conclude that a rational jury could determine that Defendant possessed methamphetamine and placed it under the child. *See Cunningham*, 2000-NMSC-009, ¶ 26. However, we remain unpersuaded that the evidence presented by the State satisfied the first and third factors. We explain.

**{17}** At trial, there was no evidence presented of the child's actual age. Officer Hernandez testified that Defendant's son was "approximately give or take six months old," which she based on her own experience with children. Furthermore, there was no expert testimony presented that would inform the jury what a child of this age is capable of, such as rolling over or grabbing and holding objects. Additionally, there was no scientific or empirical evidence presented explaining the various forms of exposure to methamphetamine a child in this situation could have experienced (e.g., direct or indirect), detailing the harm the child may have suffered as a result of this contact, or the likelihood of exposure and harm Defendant's son actually experienced. *See Schaaf*, 2013-NMCA-082, ¶ 9. We believe it is common sense that any exposure to methamphetamine is dangerous to a child; however, the State did not present evidence to establish the gravity of risk or the likelihood of harm that was created by Defendant in

---

[1]While our Supreme Court notes in Chavez that the third factor is "no longer the determinative factor," it "informs the court of the foreseeability of the risk when evaluating its magnitude." Id.

this case. *See id.* Additionally, there was no evidence presented that Defendant's son was lying on the blanket for a significant amount of time, and, further, he was observed by either his mother or officers the entire time he was on the blanket. *See id.*

**{18}** While we do not condone children of any age to be anywhere near methamphetamine, the State, in this case, did not present specific evidence connecting the circumstances to a "substantial and foreseeable risk of harm." *Id.* As such, we are unable to ascertain the gravity of risk or the likelihood of harm, or consequently, the "substantial and unjustifiable risk" that Defendant's conduct created when he placed a small, tied off bag of methamphetamine under a blanket that his unrestrained son was sleeping on. Therefore, we cannot conclude the State presented sufficient evidence to support Defendant's conviction for negligent child abuse by endangerment and reverse this conviction.

## II.    Ineffective Assistance of Counsel

**{19}** Defendant next argues that trial counsel was ineffective for failing to move to suppress evidence seized during an unconstitutional search of the car after he had already been arrested. We disagree.

**{20}** Criminal defendants possess a constitutional right to "reasonably effective assistance of counsel." *State v. Tafoya*, 2012-NMSC-030, ¶ 59, 285 P.3d 604 (internal quotation marks and citation omitted); *see also* U.S. Const. amend. VI (same); N.M. Const. art. II, § 14 (same). "We review claims of ineffective assistance of counsel de novo." *State v. Dylan J.*, 2009-NMCA-027, ¶ 33, 145 N.M. 719, 204 P.3d 44. Claims of ineffective assistance of counsel are assessed using the test articulated by the Supreme Court of the United States in *Strickland v. Washington*, 466 U.S. 668, 687 (1984). *Dylan J.*, 2009-NMCA-027, ¶ 36. To make a prima facie case of ineffective assistance of counsel under this test, Defendant bears the burden of demonstrating "attorney error and prejudice." *See State v. Crocco*, 2014-NMSC-016, ¶ 14, 327 P.3d 1068. For a claim of ineffective assistance of counsel raised on direct appeal, "we evaluate the facts that are part of the record." *Id.* (internal quotation marks and citation omitted).

**{21}** "Generally . . ., passengers lack a reasonable expectation of privacy in [cars] or their contents and, as a consequence, passengers typically lack standing to challenge automobile searches." *State v. Portillo*, 2011-NMCA-079, ¶ 10, 150 N.M. 187, 258 P.3d 466. However, in *State v. Van Dang*, 2005-NMSC-033, ¶¶ 8-10, 138 N.M. 408, 120 P.3d 830, our Supreme Court held that "[a] showing of special circumstances, such as status as a regular permissive user who exerts control over the [car] and its contents, may support a different result in an appropriate case." *State v. Portillo*, 2011-NMCA-079, ¶ 10. Here, the parties agree that Defendant did not own the car in question and there was no such evidence presented to the contrary, and on the record before us, there was no showing of such special circumstances. Without such evidence, Defendant has not established a constitutionally protected expectation of privacy in another person's car.

**{22}**   Because the record does not demonstrate evidence of standing necessary for a suppression motion, Defendant lacked the requisite standing to contest the search and therefore, a motion to suppress the evidence would have been unmeritorious. *Cf. State v. Mosley*, 2014-NMCA-094, ¶ 30, 335 P.3d 244 ("Where a meritorious motion to suppress key evidence could weaken the prosecution's case against the defendant, counsel's failure to make such a motion may prejudicially affect the defendant."). Based on the foregoing, Defendant has not established a prima facie case of ineffective assistance of counsel. Our holding today does not preclude Defendant from asserting his ineffective assistance of counsel claim in a habeas corpus proceeding where an adequate factual record can be developed for a court to make a reasoned determination of the issues. *See State v. Cordova*, 2014-NMCA-081, ¶ 7, 331 P.3d 980 ("Our Supreme Court has expressed a preference that ineffective assistance of counsel claims be adjudicated in habeas corpus proceedings, rather than on direct appeal.").

**CONCLUSION**

**{23}**   For the foregoing reasons, we reverse Defendant's conviction for child abuse and remand to the district court for proceedings consistent with this opinion, and affirm Defendant's remaining convictions.

**{24}   IT IS SO ORDERED.**

**SHAMMARA H. HENDERSON, Judge**

**WE CONCUR:**

**KRISTINA BOGARDUS, Judge**

**JACQUELINE R. MEDINA, Judge**