This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports. Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions. Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

# IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**No. A-1-CA-40835**

**STATE OF NEW MEXICO,**

Plaintiff-Appellee,

v.

**PHILLIP EARL SCOTT,**

Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF EDDY COUNTY**
**Eileen P. Riordan, District Court Judge**

Raúl Torrez, Attorney General
Santa Fe, NM
Walter Hart, Assistant Attorney General
Albuquerque, NM

for Appellee

Gary C. Mitchell, P.C.
Gary C. Mitchell
Ruidoso, NM

for Appellant

## MEMORANDUM OPINION

**IVES, Judge.**

**{1}** After a jury trial, Defendant Phillip Earl Scott was convicted of attempted first degree murder and aggravated assault with a deadly weapon. *See* NMSA 1978, § 30-28-1 (1963, amended 2024) (attempt to commit a felony); NMSA 1978, § 30-2-1(A)(1) (1994) (first degree murder); NMSA 1978, § 30-3-2(A) (1963) (aggravated assault with a deadly weapon). On appeal, Defendant argues that (1) the district court erred by refusing to impose discovery sanctions; (2) fundamental error occurred because the

prosecutor engaged in misconduct during closing argument; (3) double jeopardy principles prohibit Defendant from being convicted and sentenced for both offenses; (4) his right to effective assistance of counsel was violated; and (5) his right to due process was violated because of cumulative error. Unpersuaded, we affirm.

**DISCUSSION**

### I. Defendant Has Not Established Any Discovery Violation

**{2}** Defendant argues that the district court abused its discretion by denying Defendant's motion to sanction the State for a discovery violation. *See State v. Le Mier*, 2017-NMSC-017, ¶ 22, 394 P.3d 959 (recognizing that rulings regarding discovery sanctions are reviewed for abuse of discretion). Specifically, Defendant contends that the State made a "late disclosure" that it had seized a handgun from Defendant's truck. Defendant's contention is directly contrary to a finding made by the district court during the hearing on Defendant's motion for discovery sanctions. The district court found that the State timely disclosed the existence of the gun by producing photographs depicting the gun. Defendant does not contend that this finding lacks support in the record, and Defendant cites nothing in the record to support his claim that the disclosure was untimely. Because Defendant has not established that the State violated any discovery requirement, we see no basis for concluding that a sanction would have been appropriate, much less that the district court erred by declining to sanction the State. We therefore affirm the denial of Defendant's motion for sanctions.[1]

### II. Claim of Fundamental Error Regarding Closing Argument

**{3}** Defendant argues that comments made during closing arguments amount to prosecutorial misconduct. Specifically, Defendant asserts that the State improperly appealed for sympathy for Victim by stating that "Defendant put his finger on the trigger, and picked [the gun] up and pointed it at [Victim]. The next thing that [Victim] heard was a click. . . . I can't fathom how you would feel to see what [Victim] was seeing at that moment and then to hear that sound." Defendant also contends that the State mischaracterized Victim's testimony when it implied Victim's injuries were a permanent condition. Defendant identifies several comments about the bullet lodged in Victim's head, including "when it's cold, that bullet gets cold," and when Victim wears a hard hat at work, "that bullet rubs on the side of his hard hat," which is "[a] constant reminder of that day, of what he had to endure that day." Lastly, Defendant alleges the State improperly injected a personal anecdote: "What motive [did Defendant have]? The tumbleweed being thrown? I live next to a park, my house, and I can't tell you how many

---

[1]Defendant also appears to argue that the State should have been sanctioned for never disclosing "any discovery of an inventory list or a return on the search warrant" for the truck. Defendant did not preserve this issue. *See* Rule 12-321 NMRA. After the district court concluded that the State had timely disclosed the existence of the gun, the district court ordered the State to produce any additional discovery materials related to the search, and informed Defendant that any problems with that discovery would have to be raised by filing a new motion. Defendant never filed any such motion.

Sonic cups, and McDonald's bags, and various trash items come into my yard. Is that an excuse? Is that a reason to try and take someone's life?"

**{4}** Because Defendant's counsel failed to object to these comments in the district court, these claims of error are not preserved, and we are "limited to a fundamental error review." *See State v. Sosa*, 2009-NMSC-056, ¶ 26, 147 N.M. 351, 223 P.3d 348. We apply a two-step analysis, in which we first determine if there was error and, if there was, whether it rises to the level of fundamental error. *See State v. Silva*, 2008-NMSC-051, ¶ 11, 144 N.M. 815, 192 P.3d 1192. "We exercise our discretion to employ the fundamental error exception very guardedly and apply it only under extraordinary circumstances to prevent the miscarriage of justice." *Id.* ¶ 13 (text only) (citations omitted).

**{5}** Here, we need not review whether there was error because Defendant provides no argument regarding how the alleged error was fundamental. When the underlying error is prosecutorial misconduct, a defendant establishes that the error was fundamental by showing that the misconduct was "so egregious and had such a persuasive and prejudicial effect on the jury's verdict that the defendant was deprived of a fair trial." *State v. Allen*, 2000-NMSC-002, ¶ 95, 128 N.M. 482, 994 P.2d 728 (text only) (citation omitted). Defendant must persuade us "that the prosecutor's conduct created a reasonable probability that the error was a significant factor in the jury's deliberations in relation to the rest of the evidence before them." *Sosa*, 2009-NMSC-056, ¶ 35 (text only) (citation omitted). Nowhere on appeal has Defendant explained how the comments were egregious, persuasive, or had a prejudicial effect on the verdict; he further makes no argument that the comments were a significant factor in the jury's deliberations. *See State v. Flores*, 2015-NMCA-002, ¶ 17, 340 P.3d 622 ("Our Court has been clear that it is the responsibility of the parties to set forth their developed arguments, it is not the court's responsibility to presume what they may have intended."). Absent a developed argument regarding the essential second step in the fundamental error analysis, we decline to reach the merits of this claim of error. *See State v. Ferguson*, 2023-NMCA-029, ¶ 30, 528 P.3d 707 (declining to reach the merits of a claim of fundamental error because the defendant "ha[d] not developed an argument addressing the considerations relevant to a fundamental error analysis").

### III. Double Jeopardy Claim

**{6}** For a very similar reason, we decline to reach the merits of Defendant's double jeopardy argument that he cannot be convicted of and sentenced for both attempted murder and aggravated assault. We review double description claims like Defendant's de novo, *see State v. Swick*, 2012-NMSC-018, ¶ 10, 279 P.3d 747, applying the two-part test in *Swafford v. State*, 1991-NMSC-043, ¶ 25, 112 N.M. 3, 810 P.2d 1223. First, we consider "whether the conduct underlying the offenses is unitary." *Id.* If the conduct is unitary, we move to the second step, which requires us to determine "whether the [L]egislature intended to create separately punishable offenses." *Id.* Critically, double jeopardy is violated "[o]nly if the first part of the test is answered in the affirmative, and the second in the negative." *Id.*

**{7}** Here, analysis of the first part of the test, unitary conduct, is absent from Defendant's briefing. Defendant has not argued—based on the specific facts of his case—that his conduct was unitary. *See State v. Phillips*, 2024-NMSC-009, ¶ 13, 548 P.3d 51 ("[W]e attempt to determine, *based upon the specific facts of each case*, whether a defendant's activity is better characterized as one unitary act, or multiple, distinct acts, consistent with legislative intent." (emphasis added) (internal quotation marks and citation omitted)). In his brief in chief, Defendant merely *asserts* that his conduct was unitary without any elaboration.[2] We therefore decline to reach the merits of Defendant's double jeopardy claim.

## IV.  Ineffective Assistance of Counsel Claims

**{8}** Defendant argues that his trial counsel's performance was deficient in five ways. First, his counsel did not pursue an attempted manslaughter instruction. Second, his counsel failed to pursue evidence regarding the physical capabilities of Defendant and Victim and the alleged antagonistic relationship between the two. Third, his counsel failed to object to improper statements made by the State in its closing arguments. Fourth, his counsel in various ways mishandled the use of evidence relating to the firearm. Fifth, his counsel failed to raise the proper objection to the introduction of the 911 call into evidence.

**{9}** Reviewing Defendant's claims de novo, we apply a two-prong test from *Strickland v. Washington*, 466 U.S. 668 (1984). Defendant must "show [(1)] that his counsel's performance was deficient and [(2)] that the deficient performance prejudiced his defense." *State v. Dylan J.*, 2009-NMCA-027, ¶¶ 33, 36, 145 N.M. 719, 204 P.3d 44. Defendant does not establish a prima facie case for any of his claims. The first and second claim fail under the first prong, and his remaining claims fail under the second prong. *See Strickland*, 466 U.S. at 697 ("[T]here is no reason for a court deciding an ineffective assistance claim to approach the inquiry in the same order or even to address both components of the inquiry if the defendant makes an insufficient showing on one."); *accord Lukens v. Franco*, 2019-NMSC-002, ¶ 19, 433 P.3d 288. We address each claim in turn.

## A.  Defendant Has Not Established Deficient Performance for His First and Second Claims

**{10}** Counsel's "performance is deficient if [their] conduct falls below that of a reasonably competent attorney." *Dylan J.*, 2009-NMCA-027, ¶ 37. "We indulge a strong presumption that counsel's conduct falls within the wide range of reasonable

---

2Defendant's discussion of unitary conduct in his reply brief does not warrant review of the merits of his claim for two separate reasons. First, "this Court does not consider arguments raised for the first time in the reply brief." *Webb v. Menix*, 2004-NMCA-048, ¶ 23, 135 N.M. 531, 90 P.3d 989. Second, the argument is not adequately developed. It consists of several pages of case illustrations plus a one-sentence assertion that one of the precedents is generically similar to Defendant's case. Nowhere does Defendant explain how the law as developed in the cited precedents applies to the facts of Defendant's case, and we will not hazard a guess as to what Defendant's argument might be. *See State v. Gallegos*, 2016-NMCA-076, ¶ 42, 387 P.3d 296.

professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *State v. Hunter*, 2006-NMSC-043, ¶ 13, 140 N.M. 406, 143 P.3d 168 (text only) (citation omitted).

**{11}** Defendant argues his counsel performed deficiently by abandoning an attempted voluntary manslaughter instruction. Specifically, he argues that there was adequate evidence to prove "sufficient provocation," an element of voluntary manslaughter, *see* UJI 14-220 NMRA, because Victim caused tumbleweeds to go onto Defendant's property and then the two exchanged curse words. We reject Defendant's claim because Defendant fails to establish—based on the arguments and record on appeal— that his trial counsel's decision to abandon the provocation defense was not a sound strategy.

**{12}** We begin by noting that voluntary manslaughter is a lesser included offense of second degree murder, *see State v. Jernigan*, 2006-NMSC-003, ¶ 22, 139 N.M. 1, 127 P.3d 537, and that a decision by defense counsel not to request instructions for lesser included offenses is often considered tactical. *See State v. Baca*, 1997-NMSC-059, ¶ 30, 124 N.M. 333, 950 P.2d 776 (holding that the defendant's claim of ineffective assistance of counsel failed because the defense counsel may have decided, as a matter of strategy, not to request a lesser included offense instruction); *State v. Jensen*, 2005-NMCA-113, ¶¶ 12-16, 138 N.M. 254, 118 P.3d 762 (denying a claim of ineffective assistance in which defense counsel did not proffer an instruction for a lesser included offense because the defendant provided no argument that persuasively eliminated counsel's decision as a "viable strategy"). *See generally State v. Villa*, 2004-NMSC-031, ¶ 14, 136 N.M. 367, 98 P.3d 1017 (observing that the parties made tactical decisions to "pursue[] an 'all-or-nothing' trial strategy, in which neither party requested instructions on any lesser[]included offenses").

**{13}** We do not believe the record on appeal supports Defendant's assertion that his trial counsel pursued "no legitimate tactic" by abandoning the instruction. In closing arguments, Defense counsel focused on the theory that the State did not meet its burden of proving that Defendant shot Victim. That theory arguably would have been undermined by the pursuit of a voluntary manslaughter instruction. That is, by arguing provocation, defense counsel might have been understood to imply that the State's evidence sufficed to prove that Defendant shot Victim, but that the jury should convict Defendant of attempted voluntary manslaughter because Defendant was provoked. Declining to pursue alternative defenses that conflict with each other is a reasonable tactic. *See State v. Garcia*, 2011-NMSC-003, ¶ 37, 149 N.M. 185, 246 P.3d 1057 (holding that defense counsel's decision to focus on one of two conflicting theories was not ineffective assistance of counsel because the attorney pursued a valid tactic "and understandably demurred from posing a contradictory theory to the jury"). Because the record on appeal is consistent with such a tactic, we have no basis for concluding that defense counsel's performance was deficient. *See Dylan J.*, 2009-NMCA-027, ¶ 39 ("[I]f on appeal we can conceive of a reasonable trial tactic which would explain the

counsel's performance, we will not find ineffective assistance." (internal quotation marks and citation omitted)).

**{14}** Turning to Defendant's second claim, he argues his defense counsel should have pursued arguments concerning the physical abilities of Defendant and Victim and the antagonistic relationship between Defendant and Victim. Defendant provides no record cite to support his assertions. *See State v. Smith*, 2019-NMCA-027, ¶ 17, 458 P.3d 613 ("It is not our practice to rely on assertions of counsel unaccompanied by support in the record. The mere assertions and arguments of counsel are not evidence." (text only) (citation omitted)). And he provides only a single sentence argument: "Most certainly it was not a tactical move." Defendant does not elaborate on how his counsel's performance was deficient. "[W]e will not guess at what [a d]efendant's argument might be." *Gallegos*, 2016-NMCA-076, ¶ 42. Defendant has not rebutted the strong presumption that counsel provided reasonable assistance. *See Hunter*, 2006-NMSC-043, ¶ 13.

**B.      Defendant Has Not Established Prejudice for His Third, Fourth, and Fifth Claims**

**{15}** Defendant's arguments regarding his remaining claims fail to satisfy the basic test for the second prong of an ineffective assistance claim: "A defense is prejudiced if, as a result of the deficient performance, there was a reasonable probability that the result of the trial would have been different." *Dylan J.*, 2009-NMCA-027, ¶ 38 (text only) (citation omitted).

**{16}** In support of his third claim, Defendant argues that because his counsel failed to object to comments made during the State's closing argument, his defense was prejudiced. Defendant asserts, in conclusory fashion, the State's comments were "very prejudicial" and refers to his arguments relating to prosecutorial misconduct. As we noted in our discussion of whether the comments amounted to fundamental error, Defendant does not develop any argument as to how the comments were prejudicial. That is, Defendant does not elaborate on how the comments could have impacted the jury's decision; he does not propose a theory as to how, absent the comments, there was a reasonable probability that the result would be different. *See Gallegos*, 2016-NMCA-076, ¶ 42. We therefore decline to consider this claim further.

**{17}** In support of his fourth claim (that counsel botched the use of evidence relating to a firearm) and his fifth claim (that counsel should have objected to the introduction of the 911 call under the confrontation clause), Defendant fails to make any argument whatsoever that these alleged deficiencies prejudiced his defense. We will not imagine one for him. *See id.*

**{18}** For these reasons, we hold Defendant has not presented a prima facie case of ineffective assistance of counsel with respect to any of his claims. Our holding does not preclude Defendant from pursuing these claims via a petition for a writ of habeas corpus. *See State v. Cordova*, 2014-NMCA-081, ¶ 16, 331 P.3d 980.

## V.      Defendant Has Not Established Cumulative Error

**{19}**      Defendant contends that his claimed errors resulted in cumulative error that deprived him of a fair trial. Because we can identify no prejudice resulting from any of the claimed errors, the doctrine of cumulative error does not support reversal. *See State v. Jett*, 1991-NMSC-011, ¶ 29, 111 N.M. 309, 805 P.2d 78 ("Cumulative error requires reversal of a criminal conviction when the cumulative impact of irregularities during trial is so prejudicial that the defendant was denied a fair trial.").

## CONCLUSION

**{20}**      We affirm.

**{21}   IT IS SO ORDERED.**

**ZACHARY A. IVES, Judge**

**WE CONCUR:**

**KRISTINA BOGARDUS, Judge**

**GERALD E. BACA, Judge**